Matter of Podlofsky (2018 NY Slip Op 06017)





Matter of Podlofsky


2018 NY Slip Op 06017


Decided on September 12, 2018


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 12, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
COLLEEN D. DUFFY, JJ.


2016-06435 

[*1]In the Matter of Ira C. Podlofsky, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Ira C. Podlofsky, respondent. (Attorney Registration No. 2200574)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on application dated November 22, 2016, this Court authorized the Grievance Committee to institute and prosecute a disciplinary proceeding against the respondent based upon the acts of professional misconduct set forth in a verified petition dated June 21, 2016; directed the respondent to serve and file an answer to the verified petition within 20 days of service upon him of a copy of the verified petition; and referred the issues raised by the verified petition and any answer thereto to the Honorable Patrick A. Sweeney, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on October 1, 1980.



Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Arnold E. DiJoseph P.C., New York, NY (Arnold E. DiJoseph III of counsel), for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated June 21, 2016, containing four charges of professional misconduct. By virtue of a stipulation executed by counsel for the parties at the pretrial conference held on March 30, 2017, the petition and the respondent's answer were amended such that the respondent admitted all of the factual specifications supporting the charges. After a hearing conducted on June 29, 2017, the Special Referee filed a report in which he sustained all of the charges. The petitioner now moves to confirm the Special Referee's report and to impose such discipline as the Court deems just and proper. The respondent cross-moves to grant the petitioner's motion, and requests that he not be suspended or removed from the practice of law. The Petition As Amended
Charge one alleges that the respondent misappropriated escrow funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
The respondent maintained an attorney trust account at HSBC Bank entitled "Ira Podlofsky Esq Attorney Special IOLA Account," account number ending 925-9 (hereinafter the trust account).
In or about 2008, the respondent, as the attorney for the plaintiffs, commenced a medical malpractice action entitled Klein v Argoff in the Supreme Court, Nassau County, under [*2]Index No. 9065/2008. In or about 2010, a settlement was reached with the defendant Central Island Health Care in the sum of $200,000 (hereinafter the Central Island settlement). In or about 2010, a settlement was reached with the defendants Charles E. Argoff and North Shore University Hospital in the sum of $150,000 (hereinafter the Argoff/North Shore settlement). The plaintiffs discontinued the action against the remaining defendants.
Between on or about December 21, 2010, and in or about March 2011, the respondent received payments totaling $135,310.68 from the insurance carrier for Central Island, which he deposited into the trust account. These funds represented the Central Island settlement minus a medicare reimbursement, which payment was made directly to Medicare CMS by the insurance carrier. By March 18, 2011, the respondent had disbursed all funds related to the Central Island settlement from the trust account.
Pursuant to a hold harmless agreement dated on or about May 10, 2012, the respondent agreed to hold $25,000 of the $150,000 Argoff/North Shore settlement in escrow pending final payment of a Medicare lien. In or about June 2012, the respondent received the Argoff/North Shore settlement funds from Physicians Reciprocal Insurers by two checks, one in the sum of $25,000 and the second in the sum of $125,000. Both settlement checks were made payable to Barry Klein, Harriet Klein, and the respondent. On June 8, 2012, the respondent deposited both checks into the trust account.
Within days of the deposit of the Argoff/North Shore settlement checks, the respondent issued trust account check no. 1929 to himself in the sum of $44,761 for fees/expenses, and that check cleared on June 13, 2012. On June 14, 2012, the respondent issued trust account check no. 1930 in the sum of $80,240 to Harriet Klein, which represented the clients' share of the Argoff/North Shore settlement, less the $25,000 Medicare lien. Check no. 1930 did not clear the respondent's trust account until December 4, 2012. Between June 13, 2012, and December 4, 2012, the respondent was required to maintain and preserve a minimum of $105,240 in his trust account, representing the $80,240 check (no. 1930) issued to Harriet Klein but not yet negotiated, and the $25,000 for the Medicare lien. During this period, the balance in the trust account fell below $105,240 as follows:
Date Balance
September 24, 2012 $103,372.76
September 28, 2012 $103,385.52
October 5, 2012 $103,340.90
October 31, 2012 $103,354.92
After check no. 1930 to Harriet Klein cleared on December 4, 2012, the respondent was required to maintain and preserve a minimum of $25,000 in the trust account until the Medicare lien was resolved. The respondent paid the Medicare lien to "CMS" by trust account check no. 1990, in the amount of $9,500.34, which check cleared the trust account on December 9, 2013. While entrusted with the Klein Medicare lien funds, between December 4, 2012, and December 9, 2013, the balance in the respondent's trust account fell below $25,000 as follows:
Date Balance
December 14, 2012 $23,129.38
January 3, 2013 $13,133.25
January 4, 2013 $13,100.90
March 6, 2013 $13,645.97
April 2, 2013 $13,655.67
April 4, 2013 $13,606.90
April 29, 2013 $22,981.90
April 30, 2013 $22,983.83
May 1, 2013 $22,483.83
May 3, 2013 $19,299.68
May 6, 2013 $13,046.66
May 17, 2013 $10,046.66
June 12, 2013 $21,545.80
June 28, 2013 $21,554.84
July 3, 2013 $21,532.73
July 31, 2013 $21,534.68
August 30, 2013 $21,536.45
October 15, 2013 $21,632.73
October 31, 2013 $21,634.99
November 25, 2013 $21,634.99
November 29, 2013 $21,644.22
By trust account check no. 2074 dated January 6, 2015, in the amount of $8,000, the respondent made a partial disbursement to Barry Klein. That check cleared the trust account on March 26, 2015. After the Medicare lien was paid on December 9, 2013, and before trust account check no. 2074 to Barry Klein cleared the trust account on March 26, 2015, the respondent was required to maintain and preserve a minimum of $15,499.66 in the trust account on behalf of the Kleins. However, during the intervening period, the balance in the trust account fell below $15,499.66 as follows:
Date Balance
February 5, 2014 $14,202.24
March 17, 2014 $14,016.31
March 20, 2014 $ 2,417.73
April 1, 2014 $ 4,336.77
April 3, 2014 $ 2,836.77
June 23, 2014 $11,793.08
March 18, 2015 $ 5,372.12
Charge two alleges that between September 2014 and March 2015, the respondent issued 20 checks from the trust account made payable to "cash," totaling $6,500, in violation of rule 1.15(e) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge three alleges that between in or about December 2010 and in or about March 24, 2015, inclusive, the respondent utilized checks from his trust account identified only as "Ira Podlofsky Esq.," without including in the title "Attorney Special Account," "Attorney Trust Account," or "Attorney Escrow Account," in violation of rule 1.15(b)(2) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge four alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of rule 8.4(d) of the Rules of Professional Conduct (22
NYCRR 1200.0). Although the respondent was retained in 2008 to represent Barry Klein and Harriet Klein to prosecute a medical malpractice action, he did not file a retainer statement with the Office of Court Administration (hereinafter OCA), as required by 22 NYCRR 691.20(a)(1), until on or about March 23, 2016. The Evidence at the Hearing
At the hearing, the respondent explained that he received the Central Island settlement proceeds in two installments. In early 2011, he received a check in the sum of $40,000, from which he issued a check for $28,000 to Klein and a fee check for $12,000 to himself . A few weeks later, after receiving the second check in the sum of $95,310.68, the respondent sent Klein his funds. The respondent testified that although he was entitled to $48,000 as his fee, he had intended to leave $13,000 in the trust account and remove only $35,000 at that time. The trust account checkbook indicated that he had removed $35,000 of the $48,000 fee. However, he now realizes that he removed the entire $48,000, together with a $9,000 fee from another matter, by transferring $57,000 to his operating account on March 18, 2011. The respondent testified that, in or about 2013 or 2014, believing that he still had $13,000 of the Central Island settlement proceeds in the trust account, he issued two fee checks totaling $13,000 to himself. Since the respondent had already taken his full fee in 2011, his removal of the $13,000 represented an overpayment of his fee, and created a trust account deficiency. It was not until a trust account check to another client was dishonored in 2015 that the respondent discovered the trust account deficiency.
As previously noted, the respondent was required to hold $25,000 of the Argoff/North Shore settlement proceeds in his trust account until a Medicare lien had been resolved. In or about October 2013, the respondent received notice that the Medicare lien had been resolved, and he paid CMS $9,500.34 to satisfy the lien. He left the remaining $15,499.66 in the trust account, claiming that there was a judgment against Klein in favor of Townhouse Rehabilitation facility for money owed stemming from the care provided to Klein while he was an inpatient. After discussing the Townhouse judgment with Klein, the respondent disbursed $8,000 to Klein in January 2015. The respondent states that he later disbursed the remainder of the funds to Klein.
On cross-examination, the respondent testified that he did not maintain a ledger for the trust account, only the checkbook, and that he very rarely reconciled the account. After the respondent received the dishonored check notice in 2015, he made efforts to reconstruct the account, [*3]and discovered the $13,000 fee overpayment in the Klein matter. The respondent states that he now utilizes the services of an accounting firm to manage his trust account. Findings and Conclusion
Based upon the evidence adduced, the Special Referee sustained all charges, and reported that the respondent acknowledged that "he was not diligent in paying attention to the Rules concerning the maintenance of a trust account," and that the respondent was distracted from addressing the issues in his trust account as "his law practice, as well as his personal income suffered from the fact that his law partner who was his wife became involved in lengthy divorce proceedings." The Special Referee noted that the respondent did not offer this as an excuse, but as "his personal and professional life . . . were so intertwined [, the respondent] overlooked the fine points of maintaining an escrow account in accordance with the Court Rules." Further, in response to these proceedings, the respondent states that "he has diligently complied with all the Rules and has engaged the services of an accounting firm to monitor the account."
In view of the evidence adduced and the respondent's admissions, we find that the Special Referee properly sustained the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted, as is that branch of the respondent's motion which seeks that relief.
In seeking a sanction without a suspension or removal from practice, the respondent contends, inter alia, that his misconduct did not involve venality or personal gain, and that he is not a threat to the public. In mitigation, among other things, after being notified of a dishonored check in 2015, the respondent restored the misappropriated funds, candidly admitted his misconduct, expressed remorse, took steps to ensure that such errors will not be repeated, offered evidence of his good character and charitable endeavors, and cooperated with the petitioner's investigation. Notwithstanding the mitigation advanced, we find, inter alia, that the respondent, a seasoned attorney, failed to maintain a sufficient trust account balance and to detect the account deficiency for an extended period, failed to maintain a ledger and to regularly reconcile his trust account, improperly issued multiple trust account checks to cash, and used trust account checks without the proper account title. Moreover, the respondent benefitted from the use of client funds during the period when there was a trust account deficiency. The respondent's misconduct is not isolated, and reflects a longstanding disregard of the rules regarding the proper maintenance of attorney trust accounts. Additionally, as an aggravating factor, we have considered that the respondent's disciplinary record is not unblemished, as he has received three Admonitions.
Under the totality of the circumstances, we find that a suspension from the practice of law for a period of two years is warranted (see Matter of Farkas, 133 AD3d 81).
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and DUFFY, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted, and the respondent's cross motion is granted to the extent it seeks to confirm the Special Referee's report, and the cross motion is otherwise denied; and it is further,
ORDERED that the respondent, Ira C. Podlofsky, is suspended from the practice of law for a period of two years, commencing October 12, 2018, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than April 13, 2020. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Ira C. Podlofsky, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that, pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Ira C. Podlofsky, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, [*4]or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Ira C. Podlofsky, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court